Good morning, Your Honors. My name is Ben Coleman. I'll be arguing on behalf of the appellant, cross appellee, Mr. Plancarte-Alvarez. What I'd like to do is just start off briefly with the 404B issue and then move right into the government's, the sentencing issue the government raised on the cross appeal. With respect to the 404B issue, I'd like to briefly just address the Garcia-Orozco case from this Court and the government's treatment of that case. Garcia-Orozco is the case where the defendant was facing similar charges to Mr. Plancarte-Alvarez, and that defendant had a prior incident where he was a passenger in a vehicle where heroin was found. When he was stopped, he fled the scene, was caught, and ultimately was convicted of fleeing or resisting arrest. He was not convicted of the drug charges that were brought against him for that case. It's not clear whether he went to trial or got some type of plea bargain. And in that case, this Court held that the omission of the 404B evidence was error and that the error was not harmless. The government, in dealing with Garcia-Orozco, cites it on page 20 of their brief, and they actually have a block quote from the decision, from the Garcia-Orozco decision. However, in the middle of the block quote is an ellipse. And what the government has done is they've omitted the two key sentences from Garcia-Orozco somewhat conveniently, and I'd like to read those two sentences to the Court now. Those sentences are significantly unlike in Vivo-Rodriguez. Garcia-Orozco was not convicted of importation or possession of drugs in the previous incident. Garcia-Orozco had no demonstrated connection to the drugs in the 1988 incident and had not claimed that he was duped into transporting drugs. And in this particular case, with respect to the prior incident, Mr. Plancarte had not been convicted of importation or possession of drugs for the prior incident. He had not claimed on the prior incident that he had been duped into transporting drugs. And at trial, the only evidence that the government introduced with respect to the prior incident was that Mr. Plancarte Alvarez was found in a vehicle where marijuana was found. They didn't introduce any other evidence about the incident. So it's our position that Garcia-Orozco controls this case, and Garcia-Orozco also indicates that the error is not harmless. I'd now like to move on to the sentencing issue that was raised in the government's cross-appeal. May I ask you just, you submitted this case, U.S. v. Charles Thomas? Correct. What does that go to? That goes to the sentencing cross-appeal. And I'll address that case in just a second. With respect to the sentencing cross-appeal, I'd just like to inform the Court that I have recently been advised that Mr. Plancarte Alvarez was released from the Federal Bureau of Prisons and deported to Mexico. And with the Court's permission, I'd like to file a written motion to dismiss the government's cross-appeal based on mootness and also based on equitable and common law principles. Well, would his supervised release terms be affected in any way? No, because these terms of supervised release for that supervision was waived upon deportation to Mexico. So with the Court's permission, I would like to file a written motion to dismiss the government's cross-appeal. Putting that procedural issue aside, I'd like to sort of move a little bit more to the merits of the government's cross-appeal. The first issue may be somewhat considered procedural, which is I'm not sure whether the government has adequately preserved the issue for this Court to rule. What happened, and this ties into the merits of the apprendee issue that the government has raised, but what happened in the district court is that Judge Gonzalez found there were two counts that were charged that he was not convicted on, and the government had the opportunity to proceed forward to trial on those two remaining charges. Judge Gonzalez found that if she included the drugs from those two charges in this particular sentence, that there would be an apprendee violation because it would increase the amount of marijuana beyond 50 kilograms, which would then increase the statutory maximum. The judge said to the government, what do you want to do on those two remaining charges? And the government elected not to go forward to trial, but instead to dismiss the charges. In that particular circumstance, it's my position that the government has essentially waived any issue here. The government could very well have gone forward on those two charges and increased the sentence on those two charges, had he sustained a conviction, but instead, the government chose not to go forward. And so they shouldn't now be coming up on appeal claiming that Judge Gonzalez should have sentenced Mr. Cronkarty based on those two charges when they gave up the right to go forward at trial on those two particular charges. So you argue this in your brief? I believe that Mr. Singleton, who wrote the briefs, did mention that the government moved to dismiss those charges at the time of sentencing. So to me, it seems that the government sort of – it's almost like in a trial when a defendant claims that he received discovery late and he just received it in the middle of the trial, and the judge says, okay, well, I'll give you a continuance to look at the – look at the discovery. And the defendant says, no, that's okay, I don't need it. And then on appeal raises the fact that the defendant – that he got the discovery too late. Well, the judge gave you the opportunity to look at – to take a continuance and look at the discovery. Well, but are you saying that whenever the government elects to dismiss additional charges in an indictment, that it may not thereafter argue to the court, or that the court may not thereafter decide to include the conduct underlying the dismissed charges in the relevant conduct determination? I mean, are you making a example argument, or are you making an argument that the judge, as a matter of law, cannot consider this when this situation has occurred? Well, I guess there are two. The first argument is more – not as a matter of law the judge cannot consider it, but in this particular case, that the government has sort of waived their right to appeal this issue. Sort of an estoppel argument. Correct. But I do believe that in the particular circumstance where including the charge, yet unconvicted conduct, would increase the statutory maximum in violation of Apprendi, then the judge, as a matter of law, cannot consider it. Right, but was Judge Gonzales correct that it would increase – that it's a violation of Apprendi if – had those charges gone forward because – or to include them? Because all – it didn't increase the exposure to the statutory maximum. It just increased the range within the statutory maximum that he could be sentenced for. Well, I do believe it increased the exposure because under 50 kilograms the convicted conduct was 35 kilograms. At 35 kilograms, the maximum penalty is five years. But you're arguing the sentencing guidelines application as opposed to what the statutory maximum is. But if she increased – if she included the other 35 kilograms, the charge, yet unconvicted conduct, that then goes to 70 kilograms, which is beyond the 50 kilogram threshold, which sets the five-year maximum. Under the sentencing guidelines. But what does the statute say? No, under the statute. Or what? Under the statute, if it's under 50 kilograms, it's a five-year statutory maximum. Once you go beyond the 50 kilograms, it becomes a 20-year statutory maximum. Well, that would be the case if he had been convicted of this other count. Correct. But bringing it in as relevant conduct to determine the base offense level resulted in a specific base offense level. Under the guidelines, that number, whatever it was, 35 or 36 or whatever, would indicate a base offense level of 22. Now, that is an ineluctable result. And that being the ineluctable result, how could that possibly then increase his exposure beyond five years when it did not? Well, it increased his exposure because he could have been subjected to 20 years. It didn't increase his guideline. How could he have been when the only thing it did was to affect the base offense level? But it didn't just affect the base offense level. It also triggered an increase from a five-year statutory maximum to a 20-year statutory maximum. So it wasn't a conviction? That was the problem. He was never convicted. But Judge Gonzales said, if I find him attributable to 70 kilograms of marijuana, it's no longer a five-year statutory maximum. I know she said that. But that's the way the statute is written. Actually, if I can read from this United States v. Thomas case, which was just decided within the last week or two, in that particular case, the defendant pled guilty. And he did not admit the amount of drugs at his guilty plea. He said he didn't know how much drugs were involved. The judge, anyhow, accepted the guilty plea. And at the time of sentencing, the judge decided to sentence him based on more than 50 grams of crack cocaine, which gave him a sentencing range of 10 to life, minimum of 10, maximum to life. And the defendant said, well, no, I never admitted the quantity at the time of the plea. And therefore, you should only be looking at a zero to 20-year statutory maximum. For a detectable amount? Correct. Okay. Minimum amount under the statute. Right. And this Court reversed. And if I can just read one paragraph, hopefully it won't take too long, but it says in this paragraph, which is on page 936 of the slip opinion, the case has not been published in F3 yet. It's just a slip opinion. But it says here, in the absence of any proof of quantity, Thomas's statutory maximum sentence should have been 20 years imprisonment. Although his 120-month sentence was below the statutory maximum, the finding that he possessed more than 50 grams of cocaine base exposed him to a maximum sentence of life imprisonment. Sentencing Thomas for possession of 50 grams or more was therefore error. In addition, by requiring a mandatory minimum imprisonment of 10 years and by increasing his base offense level under the guidelines, the error was clearly harmful. What this Court has done is said there's two separate issues. One, is there an apprendi violation? And two, is that error harmful or harmless? In this particular case, there was an apprendi violation, because if you find that more, if you attribute more than 50 kilograms of marijuana to Mr. Plancarte, his statutory maximum goes up from 5 to 20 years. Now, your position is, well, the error is harmless because his guidelines are still below the 5 years. That's what I'm understanding, is that you're saying there is really no problem here. Ginsburg. So we don't have a position for inquiring. Feigin. Okay. All right. The nature of the question, I think, is that that's kind of where I'm coming from. Feigin. What is the harm? Because his guideline range is still below the 5 years. Ginsburg. No, that's not where I'm coming from. I'm suggesting there's no error. Feigin. Okay. I believe that if you are sentenced to 70 kilograms of marijuana, which is, if you include both incidents here, it's set at 35 kilograms plus 35 kilograms, you have 70 kilograms of marijuana. Your statutory maximum then becomes 20 years. That's your statutory maximum. If anything over 50 kilograms has a statutory maximum of 20 years, that is an apprendee violation because the jury only found 35 kilograms of marijuana. So that is an apprendee violation. Then the question becomes, well, is it harmful or harmless? Because under the sentencing guidelines, the guideline range is still under 5 years, which is, I think, what Judge Thompson's question is, how is, what is the problem here because he still has a range under 5 years? And what this court has said is that, well, number one, in Thomas it says an increase in the base offense level is a harm, but number two, what the government is basically asking, asked Judge Gonzalez to do is to answer into an apprendee violation and say, well, I understand that by holding him accountable for 70 kilograms of marijuana, I'm increasing his statutory maximum, but I'm going to find that that error is harmless because the guideline range is underneath the 5 years. What the government is essentially asking her to do is to act as the appellate court in the first instance. And what Judge Gonzalez did is she said, no, I'm not going to include the other incident because it increases the statutory maximum. If you want to go to trial on the other incident, that's fine. Go ahead. But I'm not going to engage in an apprendee violation in the first instance. She can't herself engage in the violation and then herself determine that the error is harmless. And that was the appropriate procedure here. The government had the opportunity to go forward with a trial on the other counts, and they elected not to do so. And given that, Judge Gonzalez was proper in sentencing Mr. Poincarte to just 35 kilograms that he was convicted on. All right. Thank you, Counsel. You're well over your time. Let me ask you a question. Introduce yourself and then I'd like to ask you. Good morning. In order to save filing a motion on this point and briefing and all of that, do you agree, do you wish to stipulate or agree that Poincarte Alvarez has been deported and that therefore the sentencing issue is resolved? Do you disagree with that? I disagree with that, Your Honor. All right. So tell us why, because that's the basis of your cross-appeal. Well, first of all, I'm not certain that he has been deported. I'm not aware of that. So I'm not in a position to be able to stipulate that that fact has actually occurred. But I would be happy. Suppose he had been deported. Even then, Your Honor, I still believe the appropriate remedy would be to remand this back to the District Court so that the District Court could have the opportunity to, if available, if the defendant is in fact available or becomes available, to resentence the defendant according to the adjusted base offense level that would include the March 19th marijuana load. The other interesting part of that argument is, let's assume that had she just adjusted the offense level up to take into account the March 19th events, that that is not an apprendee violation. There's nothing in the law, at least I haven't seen anything that requires her to take that into consideration. The Supreme Court has said that District Courts may take conduct, relevant conduct of which the defendant has not been convicted into account in sentencing, but she's not required. So why wouldn't that be harmless error? Well, I absolutely agree. She is not required to take relevant conduct into account for sentencing purposes. I think the mistake that Appellant's counsel is making here is if there are any number of sentencing offense characteristics that a District Court can take into account that it would increase the guideline range the defendant faces. For example, while not present in this case, if there had been a firearm in the car, if he had used a minor to facilitate his coming into the country, if, for example, he has significant criminal history, all of these facts could increase the sentencing range that he would be subject to. In fact, they could even increase the sentencing range beyond the statutory maximum. But 5G1.1c of the sentencing guidelines precludes the Court from imposing a sentence beyond the statutory maximum found for the offense he was convicted of. Therefore, it is not possible for the defendant to have been exposed to a higher statutory maximum than found by the jury and alleged in the indictment. It simply could not have happened because of the sentencing guidelines. So the argument that somehow he was exposed to he would be exposed to a higher statutory maximum by aggregating the two amounts of marijuana fails because the sentencing guidelines expressly preclude the Court from doing that. And that essentially sums up the government's position as to why there was no apprendee error here, and the District Court should be given an opportunity to consider the March 19th marijuana load. And I presented to the Court in a 20HA letter, I understand it was late, the Court probably received it late or early this morning. But we cite the Ochoa case. And the Ochoa case is very important because it involves essentially the same circumstances. The defendant was charged and convicted of conspiracy to distribute 3 kilograms of cocaine. After conviction, as part of the sentencing, the District Court included in that amount a total of 39 kilograms that were attributable, that the Court felt were attributable to the defendant and could be used for sentencing purposes. Certainly adding that additional amount of cocaine would have increased the statutory maximum that the defendant would have been exposed to. But the Court specifically noted that the sentencing guidelines prevented it, prevent the defendant from being sentenced beyond the statutory maximum for the offense charged in the indictment and convicted of by the jury. Exactly the same circumstances here. That's a pretty tidy argument. I believe, Your Honor, that this argument, this Apprendi issue, is easily dealt with. The sentencing guidelines are absolutely clear. It is simply not possible for the defendant, assuming the Court complies with the sentencing guidelines, to have faced an increased exposure than what he was charged with in the indictment and found by the jury beyond a reasonable doubt. It simply could not have happened. There was no risk. There was no exposure. And so there was no Apprendi error. We'll have to ask Mr. Coleman about that. The 404B issue, Mr. Coleman addressed that briefly and I'll address it briefly as well. Essentially, defense counsel or appellate counsel relies almost exclusively on the Garcia Orozco case. In the Garcia Orozco case, this Court found that there are a number of factors that must be found before 404B evidence would be appropriate. It must tend to prove a material point. In this case, it did. Knowledge. The defendant was charged with knowingly importing 36.92 kilograms of marijuana into the United States. Knowledge was the centerpiece of the defendant's defense. In fact, on the stand at trial, when the defendant testified, he was asked when you drove that car to the border, did you know there was marijuana inside? His answer was no. At that point, there is no question that knowledge was a material issue. Second issue was, were the two incidents too remote in time? They weren't here. They were only two and a half months apart. Is the evidence sufficient to support a finding that the defendant committed the other act? It was here. The defendant on March 19, 2002 was a driver, the sole occupant, and the registered owner of a vehicle that applied for entry into the United States through a port of entry that contained marijuana. That has been found to be sufficient evidence beyond a reasonable doubt by this Court. So certainly it was sufficient for admission as 404B evidence. Now, assuming that this Court also applied the similarity requirement and that's not always required for 404B evidence, but let's assume that it does, there's absolutely no question that these two incidents qualify. On May 28, 2002, the date of the event charged in the indictment, the defendant approached the San Ysidro port of entry at 7 a.m. On March 19, he approached the port of entry at 6.10 a.m. He approached from Mexico in both cases. He was the driver and the sole occupant of the vehicle in both cases. In both cases, a narcotics detector dog alerted the vehicle. In both cases, there was marijuana in the vehicle. In both cases, the marijuana was in a non-factory compartment. And the amounts of marijuana were virtually identical as well. 36.92 kilograms in one case, 34.9 kilograms in the other. So even if we apply a similarity requirement here, there's no question these events were sufficiently similar so that the jury could use that evidence to find that the defendant had knowledge on the event in question. And so for these reasons, Your Honors, the government respectfully requests that this Court remand this case back to the district court so they can have the opportunity to consider the relevant conduct from the March 19 load and determine at that point, free from any worry that it would be violating Apprendi, whether or not to include that amount in sentencing. Thank you. Thank you, counsel. All right. Mr. Coleman, I guess Judge Thompson has a question for you regarding the Otoa case. Yeah. The argument that was made by Mr. Cook was that we all agree you can bring in relevant conduct at the time of sentencing. And he says that 5G 1.1 of the sentencing guidelines precludes the Court from sentencing the defendant to more than the statutory maximum of the crime of conviction. And so therefore, it was the defendant was never exposed to a sentence of more than five years. He has two points. Number one is that the guideline provision that he's referencing, 5G 1.1, I think it is, that cannot trump the statute, Section 841 and Section 960. Under the guidelines, what that provision does is let's say the maximum is five years or 60 months and you have a guideline range that goes from 57 months to 63 months. Under that provision, 5G 1.1, they do cap out the guideline range at 60 months because you can't go any further. But under the statute, in this particular case, if Judge Gonzalez held him accountable for more than 50 kilograms, he still, under the statute, would have been subjected to a higher statutory maximum. He would have been exposed to it, which is the word that the court keeps on using in cases like Thomas and others is just exposed, whether you are actually exposed to it or not. So while he may not have been exposed to more than five years under the guidelines, still under the statute, he would have been exposed to it. In addition, the Ochoa case was a guilty plea case where the defendant admitted the amount of drugs, the irrelevant conduct that was included in that case. He admitted he was involved in all the drugs that the government wanted to include. In this particular case, and this goes to Judge Gonzalez, the defendant vigorously denied that he should be held accountable for those other drugs. And when it comes to the judge determining whether or not to include relevant conduct, the government never offered any evidence, didn't offer any declarations, didn't have any witnesses testify as to the other incident at all. And certainly in those circumstances, Judge Gonzalez could say, without any evidence put forward by the government as to the other incident, I'm not going to include the other incident as relevant conduct. And that's why she said, do you want to go forward on the other two counts? And the government said no. So in this case, certainly it's not a reversible error for Judge Gonzalez to have not included the relevant conduct when the government did not put forward any evidence at all as to the other, as to the other conduct. All right. So do you want to go ahead and file it since there's a basic disagreement on whether your client has been deported? Yes. I believe he has been deported. I think if the government I'm not, if they check, they'll discover that he has been deported, but I'm not sure whether he's checked and thinks he's not deported. I think I'm fairly confident he has been deported. Okay. Well, why don't you go ahead and submit a brief motion. You can do it in the form of a letter brief if you'd like. Say within 10 days from today, and perhaps once the government has a chance to look into this, it can decide whether or not it wishes to oppose your motion to dismiss on the cross-appeal. And we will defer submission of this case until, you'll have 10 days to file something, and we'll give the government 10 days from that to respond. I don't know what precise date that is, but we'll defer submission until that date. Okay. Thank you very much. All right. Thank you very much. Good arguments, Counsel. Yes. The court is adjourned for the remainder of the day. Thank you very much. All rise. The second's been adjourned.
judges: Browning, Thompson, Wardlaw